**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LIVE FACE ON WEB, LLC, | : | Civil Action |
| | : | |
| Plaintiff, | : | No. 2:13-cv-06211-JS |
| | : | |
| v. | : | |
| | : | |
| USANA HEALTH SCIENCES, INC., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MOTION TO**
**COMPEL DISCOVERY AND FOR SANCTIONS**

Plaintiff, Live Face On Web, LLC ("Plaintiff" or "LFOW"), pursuant to Federal Rule of Civil Procedure 37 and Local Rule of Civil Procedure 26.1, hereby files this Motion to Compel Discovery and For Sanctions, and in support thereof, avers as follows.

**I.     PRELIMINARY STATEMENT**

1.     This action relates to defendant USANA Health Sciences, Inc.'s ("Defendant" or "USANA") willful copyright and trademark infringement and related conduct in connection with the use and misuse of the Subject LFOW Software Package[1] that LFOW licensed to USANA for use on one (1) web page / URL in accordance with LFOW's End User License Agreement or "EULA"[2].

2.     In discovery, USANA has engaged in widespread abuses by (a) failing to produce discoverable information and documents, including, without limitation, financial information, identities of third-party salespersons (referred to by USANA as "Associates") and others who viewed and were distributed copies of LFOW's registered computer source code and trademark

---

[1]     "Subject LFOW Software Package" is defined at ¶ 18 of Plaintiff's Complaint, which is incorporated herein by reference.

[2]     "EULA" is defined at ¶ 14 of Plaintiff's Complaint.

for whom USANA is vicariously liable due to any "down-stream" copyright infringement, computer files and metadata, and (b) altering and/or destroying information and documents, including, without limitation, computer and video files and metadata related thereto.

3. USANA's conduct is pervasive and abusive, and LFOW has been irreparably harmed by USANA's improper conduct, as more fully set forth herein.

## II.   DISCOVERY DISPUTE

4. By Order dated January 6, 2014 after holding a Rule 16 Conference, the Court established a case management schedule with, *inter alia*, a discovery end date of April 10, 2014 and a Plaintiff's expert report due date of April 24, 2014. No prior extensions to the case management deadlines have been requested or granted.

5. On January 8, 2014, Plaintiff served its First Set of Interrogatories ("Interrogatories") and First Set of Requests for Documents and Things ("Document Requests") (collectively, the "Discovery Requests") on Defendant. True and correct copy of the Discovery Requests are attached hereto as Exhibit A.

6. Plaintiff's discovery is narrowly tailored and seeks, *inter alia*, information that would shed light on Defendant's infringement of Plaintiff's intellectual property and related rights and the calculation of damages arising therefrom, including how the infringement and other unlawful conduct occurred, who was involved and the periods of involvement, and information relating to damages resulting from such unlawful conduct. *See e.g.* Interrogatory Nos. 6, 7, 8, 9, 10, 11, 12, 13, 14 and 20 and Document Requests Nos. 2, 3, 4, 5, 6, 7, 8, 9, 11 and 16.

7. By email dated January 13, 2014, Plaintiff first attempted to schedule depositions of USANA personnel whom it believed had relevant knowledge. A true and correct copy of the

January 13th email is attached hereto as Exhibit B.

8. Since then, despite its reasonable requests and accommodations, Plaintiff has been unable to schedule the deposition of all individuals identified by LFOW due to USANA's unreasonable demands and actions, which have included a demand that Plaintiff conduct eleven (11) depositions in Utah in several day or week consecutive day period. True and correct copies of various emails demonstrating the Plaintiff's difficulties are attached hereto as Exhibit C.

9. The parties have yet to fully schedule depositions of all witnesses requested by LFOW.

10. On February 18, 2014, after requesting and receiving an extension of time presumably to prepare responsive information, documents and data, USANA provided evasive and incomplete discovery responses to the Discovery Requests ("Discovery Responses"). True and correct copies of the Discovery Responses are attached hereto as Exhibit D.

11. The February 18, 2014 Discovery Responses were accompanied by approximately three hundred fifty (350) pages of documents in hard copy format mostly reflecting about ten (10) substantive emails and duplicates thereof without Bates labeling, and three (3) CD/DVDs containing mostly irrelevant and non-responsive files which could easily have fit on one (1) CD/DVD and have almost all of the space still available for storage ("2/18/14 Document Production").

12. By letter and email dated February 25, 2014, Plaintiff notified Defendant of its various discovery deficiencies and requested that the same be promptly cured. True and correct copies of Plaintiff's aforementioned February 25 letter and supplemental email are attached hereto as Exhibit E.

13. The parties conferred regarding USANA's discovery deficiencies by email and

through telephone conference, including a telephone conference among all counsel on March 4, 2014, but to no avail.

14. By letter dated March 7, 2014 to the Court in accordance with its policies and procedures, Plaintiff requested a teleconference in order to resolve these discovery disputes. A true and correct copy of the March 7th letter is attached hereto as Exhibit F.

15. By letter dated March 10, 2014 to the Court, Defendant responded to Plaintiff's March 7th letter and also indicated that it was serving supplemental discovery responses on the Plaintiff via hand delivery that same day. A true and correct copy of the March 10th letter is attached hereto as Exhibit G.

16. By separate letter dated March 10, 2014, Defendant supplemented its responses to LFOW's discovery with a one-page document in hard copy form purporting to be correspondence from USANA's Richard E. Wilson[3] (which was undated, not addressed to anyone in particular and clearly suspect) and two (2) CD/DVDs with additional computer and video files ("3/10/14 Document Production"). A true and correct copy of such March 10th letter is attached hereto as Exhibit H.

17. Upon information and belief, USANA waited until March 10th, i.e., thirty-one (31) days prior to the end of discovery, to produce almost of all of its relevant computer and video files evidence (albeit with alterations, modifications and deletions of metadata) so that LFOW will only have one (1) day to review such voluminous information and prepare supplemental discovery requests.

18. USANA succeeded, and caused undue burden and hardship on LFOW and its counsel by causing them to work around-the-clock in order to serve supplemental discovery

---

[3] USANA recently advised LFOW that Mr. Wilson is no longer employed with USANA, but continues to be reachable through USANA's counsel and available for deposition in this action.

requests on USANA by late evening on March 11, 2014.

19. This was done intentionally, as the computer and video files were always in USANA's possession, and appear to have been created on the CD/DVDs produced to LFOW since the middle of February 2014 (but not produced until March 10, 2014).

20. On March 13, 2014, the Court and all counsel held a discovery teleconference, at which these disputes were not able to be resolved.

21. On March 14, 2014, the Court entered an Order setting a filing date, response date and a hearing on this Motion.

22. As more fully described above and below, USANA's conduct in discovery is abusive and unconscionable and its discovery responses continue to be woefully deficient.

    A.    **Deficiencies in Interrogatory Responses**

23. USANA's responses to Interrogatories were and are inadequate because, *inter alia,* USANA failed to provide any details about how USANA modified the Subject LFOW Software Package to create infringing products and computer source code, and has failed to specifically identify by name and actions the actual USANA computer programmers and other staff responsible for the improper conduct other than one computer programmer who is implicated in the source code modification by emails produced by USANA. *See* Rog Nos. 10, 12, 18 and 19.

24. Instead, USANA wants LFOW to start taking depositions without critical information and documents in order to increase litigation costs and prevent LFOW from serving additional needed discovery within the discovery period.

25. USANA also failed to identify or produce any requested information and documents about Associates (i.e., third-party salespeople) and others who viewed the Subject

5

LFOW Software Package and infringing works. *See* Rog Nos.11, 13 and 14.

26.     Since LFOW's copyrighted source code and video player files would download and be distributed by USANA on these persons computers when they view the video presentations, such persons would themselves become liable for inadvertent copyright infringement, and USANA would be liable to LFOW therefor under contributory and/or vicarious infringement theories of liability.  Thus, information about the identities of Associates is critical for LFOW's case against USANA.

27.     Further, USANA failed to identify and produce information and documents related to USANA's revenues, expenses and profits associated with the infringement, and related information necessary for LFOW to prove its disgorgement of profits damages theory under the Copyright Act. *See* Rog Nos. 11, 12, 13 and 14.

28.     In addition, USANA failed to provide the identity of any of the URL, Web Farm, Web Server, Web Site, Web Page and other locations on which the Subject LFOW Software Package or infringing packages resided or were viewed, which is necessary for LFOW's liability and damages calculations for lost or reasonable license fees. *See* Rog Nos. 6, 7, 8, 9, 10, 15, 16 and 17.

29.     Moreover, USANA failed to identify all computers, devices and hard drives on which the Subject LFOW Software Package and infringing packages and source code were or are located, and thus is attempting to conceal the extent of its unlawful conduct. In addition to providing willfulness of the infringement, such information is necessary for calculation of damages based on lost or reasonable license fees as the Subject LFOW Software Package is only licensed for use on one (1) computer and hard-drive, and, similar to additional Web Pages and URLs, multiple replications and uses would be subject to additional license fees.

B.     **Deficiencies in 2/18/14 Document Production**

30.    The 2/18/14 Document Production was significantly deficient and violates Fed. R. Civ. P. 34 because, *inter alia*, the documents and computer files were not produced in the form kept by USANA in the usual course of business or organized and labelled to correspond to the categories, but evidence a deliberate attempt to tamper with and/or conceal evidence.

31.    For instance, two (2) of the three (3) CD/DVDs entitled "LFOW Videos" and "Dave Message original video footage" were movie DVDs that must be played via a DVD player through a television or computer screen, and do not represent the actual computer files in their native format which can be viewed and analyzed in litigation.

32.    Instead, USANA made this movie DVD using "moviemaker" software of an unspecified variety in order to create a movie that shows the infringing videos created and used by USANA with LFOW's technology, but prevents LFOW from actually having access to these video computer files to analyze them for such things as their creation date, whether they were based on the Subject LFOW Video Presentation or the original video created by USANA, who created such files at USANA and on what computers, the steps taken to create such files, and other relevant data and metadata which is discoverable in this action and necessary for LFOW to prove its willful copyright and trademark infringement claims.

33.    **Thus, USANA actually created and produced false evidence in the form of movie DVD files which materially alter relevant computer file evidence in .flv format in order to destroy evidence by changing filenames, file formats and deleting metadata so that LFOW cannot analyze these files in preparation of its claims in this action.** True and correct copies of screenshots of these of CD/DVDs and the directories showing the included movie DVD files and related file formats are attached hereto as Exhibit I.

7

34. The third of the three (3) CD/DVDs produced on February 18, 2014 contains eight (8) .flv computer files and one (1) .mov file, purporting to show the original video file used with the Subject LFOW Software Package and eight (8) unauthorized video files evidently created by USANA.

35. However, all of the files on the third CD/DVD had all or substantially all of the relevant metadata intentionally "scrubbed" or removed.

36. Further, all of the video files on the third CD/DVD appear to have been "renamed" so LFOW would have difficulty proving that such files were used with its software, or that alternatively, such "renamed" files could have been played through the video player "lfow2.swf" but did not report back to LFOW because the monitoring security feature has been disabled in this file by USANA.

37. In either case, these CD/DVDs show that USANA has withheld, concealed, altered and/or destroyed evidence in this action.

38. Even USANA's 350 pages of documents produced in hard copy format without Bates labelling were altered and not produced in their native format in order to unduly burden and frustrate LFOW in violation of Fed. R. Civ. P. 34.

39. For example, instead of producing emails in their native format as kept by USANA or printing them to look "normal", USANA instead converted the emails into Multipurpose Internet Mail Extensions (or "MIME") format and produced duplicates thereof in order to drastically distort the usability and increase the size of such emails in order to impose additional litigation costs on LFOW.

40. Therefore, while USANA only produced less than ten (10) emails of substance in total in discovery, the MIME format and duplicates generated by USANA created over three

hundred (300) pages of barely readable email text. A true and correct copy of a sample email produced by USANA in MIME format to unduly burden and frustrate LFOW is attached hereto as Exhibit J.

41. In addition, USANA has failed to provide any actual revenue, expense or profit information and documents whatsoever to enable LFOW to calculate such indirect profits damages in preparation for trial. *See* RPD No. 16.

42. Further, USANA improperly asserted various objections based on privilege, but has failed to produce a privilege log.

### C. Deficiencies in 3/10/14 Document Production

43. The 3/10/14 Document Production is also deficient, and evidences USANA's continued practice to conceal, alter and/or destroy evidence and create undue burden and hardship on LFOW.

44. First, the two (2) CD/DVDs produce damming evidence of the extent of USANA's unlawful conduct, including that it not only altered LFOW's copyrighted JavaScript source code, but that it *created* new computer program(s) in order to automatically alter LFOW's copyrighted JavaScript source code in order to enable USANA to utilize the LFOW software and technology on a mass scale throughout the world, and apparently through a new version of the LFOW Video Player created by USANA so that it would not report back to LFOW about USANA's unlawful conduct.[4]

45. In addition, discovery in this action has revealed that USANA, without permission or privilege, has created an extensive computer program to automatically modify the LFOW JavaScript Code so that USANA can play numerous video on numerous web pages or

---

[4] The LFOW Video Player contains a monitoring feature which sends information back to LFOW about what video file is being played in the LFOW Video Player along with its Web Site and Web Page location, and the EULA clearly states this in order to dissuade would-be infringers from violating LFOW's rights. See EULA at Article 1.

URLs without permission from, knowledge of, or compensation to LFOW. A true and correct copy of the "development" (i.e. test) source code for such computer program provided by USANA on March 10, 2014 is attached hereto as Exhibit K.

46. USANA produced three (3) separate versions of its "development" or "test" source code for USANA's infirming computer program, but never provided the "production" or "final" version of such program that was deployed and visible to Associates and others in USANA's worldwide marketing and sales campaign.

47. The source code of one (1) particular "development" or "test" version of the USANA computer program references seven (7) videos in .flv format, which LFOW's monitoring security feature confirmed existed and played on USANA's various URLs, however, such seven (7) video files in .flv format have never been produced by USANA in discovery.

48. Therefore, USANA must have destroyed these seven (7) video files in .flv format, as it represented to LFOW and the Court at the March 10th teleconference that no other computer files exist whatsoever other than what USANA has already produced to LFOW.

49. Moreover, all or substantially all of the relevant metadata on the computer and video files that were produced by USANA on March 10th were also "scrubbed" of metadata, thus revealing a continuous pattern of alteration and/or destruction of evidence by USANA throughout discovery.

50. The computer and video files on the newly produced CD/DVDs were available to USANA for a long time, and indicate that their production has been delayed in bad faith.

51. Further, many computer and video files relating to LFOW's software and technology (including, without limitation, any modified LFOW JavaScript code and video player files referenced in USANA's pre-litigation communications and/or responses to discovery) have

not been provided even though other discovery responses suggest they exist. *see* RPD No. 3, 6, 7 and 9.

52.     All or substantially all of the relevant metadata associated with any computer and video files that was provided has been deleted and/or altered, and no server logs and other information or documents relating to the number of access, views, hits and visits to the Subject LFOW Software Package or infringing packages has been provided despite their availability upon demand through online monitoring and other tools, sources and technology available to USANA. *See* RPD No. 4 and 5.

53.     All or substantially all of the computer and video files that were provided are not in native format, and have been "scrubbed" for metadata and other relevant information.

54.     Moreover, no documents relating to communications about (i) USANA's intent to use the subject video and technology for global marketing purposes, and (ii) how LFOW's emails delivering the Subject LFOW Software Package and related computer files and EULA were distributed and/or otherwise made available to USANA personnel other than those copied on the applicable emails.

55.     Further, to the extent USANA produced emails in discovery, it failed to produce complete emails and/or email chains which evidence despite their existence indicated in other material provided pre-litigation and/or in this action.

56.     In addition, Defendant incorporated general and other improper objections into virtually all of its responses, especially with respect to financial information involving Associates which LFOW needs to calculate its actual damages and disgorgement of profits damages, but failed to adequately explain why the Plaintiff's discovery requests did not seek information.

57. Lastly, the one-page letter from Mr. Wilson appears to have been created "after the fact" by him or USANA, and USANA should be compelled to produce the Microsoft Word or other computer file with all metadata evidencing that such letter is authentic and was actually sent to Bank of America at the stated time period.

### III. LEGAL ARGUMENT

#### A. USANA Should Be Compelled to Produce Information and Documents

58. Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

59. Federal Rule of Evidence 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." The federal rules allow broad and liberal discovery. *Pacitti, et al. v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999); *In re Madden*, 151 F.3d 125, 128 (3d Cir. 1998) (pretrial discovery is accorded a broad and liberal treatment).

60. Therefore, it is clear that the requested information, computer/video files and other electronically stored data (including metadata) is discoverable and should be produced so LFOW can prepare its liability and damages theories.

61. Under Section 504 of the Copyright Act, LFOW has the option to elect to obtain one of two types of damage remedies: (1) LFOW's actual damages and any additional profits of the infringer, or (2) statutory damages. 17 U.S.C. § 504(a)(l)-(2). With respect to "additional profits," the Copyright Act allows for the recovery of "any profits of the infringer that are

attributable to the infringement. . . ." 17 U.S.C. § 504(b), therefore, LFOW is entitled to conduct discovery on the revenues, expenses and profits of USANA as more specifically set forth in the Discovery Requests to prove "additional damages" under Section 504 of the Copyright Act.

62. In *William A. Graham Co. v. Haughey*, 568 F.3d 425, 442 (3d Cir. 2009), the Third Circuit applied a two-step framework with regard to the process for recovering an infringer's profits under Section 504. First, "the copyright claimant must [] show a causal nexus between the infringement and the [infringer's] gross revenue[.]" Id. (citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710-11 (9th Cir. 2004)). Second, after the causal nexus is established, "the infringer bears the burden of apportioning the profits that were not the result of infringement." *Id*.

63. USANA's used the Subject LFOW Software Package and related infringing works for marketing and sales purposes in order to generate profit.

64. In its SEC Form 10-Q for the Quarterly Period dated September 28, 2013 ("Q3-2013 SEC Report") filed with the Securities and Exchange Commission[5], USANA states that "Because we utilize a direct selling model for the distribution of our products, the success and growth of our business is primarily based on our ability to attract new Associates[6] and **retain existing Associates to sell and consume our products**."

65. LFOW's software and technology and similar products have been shown to increase conversation, retention, sales and revenue. A true and correct copy of an article evidencing the foregoing is attached hereto as Exhibit L.

66. USANA used the LFOW Software Package to promote its brand and products and

---

[5] LFOW respectfully requests that the Court take judicial notice of USANA's Q3-2013 SEC Report.

[6] USANA refers to its third-party salespersons as "Associates".

to retain Associates a/k/a third-party salespersons, ultimately to achieve higher revenues and profits from operations.

67. The video presentation language, the importance and high stature of its chosen spokesperson (i.e., CEO Dave Wentz) and the CEO's hand gestures in the video, evidences this:

> Hello, I'm Dave Wentz CEO of USANA Health Sciences and I want to personally welcome you to USANA. You made a great decision to partner with one of the fastest growing nutritional company in the world. ***Your sponsor and their team are staff of over one thousand employees and also an award winning management team are all here ready to help you to be successful.*** At USANA everything we do is to help you love life and live it. So what's next? ***Very soon you will receive your personalized business development system. Open it immediately.*** It contains everything you need to get started. ***As soon as possible login to usanatoday.com [USANA'S CEO MOVES HIS HAND AND POINTS TO AN AREA ON A WEBSITE] and complete the online e-apprentice. Here you will learn everything you need to know to run a successful USANA business and most importantly start taking your USANA products.*** Feel the benefits and share them with others. We want you to be part of the healthiest family on earth. We are thrilled to have you join our USANA family. I personally hope your partnership with USANA helps you enjoy your health, your life, your way. Thank you and welcome to USANA.[7]

68. USANA was clearly impressed with the results of the above LFOW Software Package, and it has implemented, or planned to implement, the LFOW software and technology for other promotional, sales, marketing and related activities focused on attracting and retaining Associates without LFOW's knowledge or authorization and without compensating LFOW. See Exhibit M hereto.

69. Based on LFOW's records, the LFOW Software Package was viewed by more than 6,000 new Associates (i.e., third-party salespersons) in furtherance of USANA's goal to "attract" and "retain" these persons in order to generate revenue.[8]

---

[7] Bold and italics added for emphasis and bracketed and caps added for descriptive purposes.

[8] USANA produced Google Analytics in discovery which suggests that the number of Associates that viewed or were exposed to the Subject LFOW Software Presentation and infringing packages was more than 14,500.

70. Based on USANA's Q3-2013 SEC Report, "sales to Associates account for the majority of our product sales, representing 91% of product sales during the nine months ended September 28, 2013." USANA also reported gross revenue of approximately $165,000,000 for such quarterly period, and indicated that it had 245,000 active Associates.

71. Thus, simple mathematics reveals that USANA generates approximately $2,451 per active Associates per year, so the more than 6,000 Associates which viewed the LFOW Software Package appear to account for approximately $14.7 million or more in gross revenue per year for USANA that would be subject to disgorgement damages.

72. However, USANA has failed to provide any actual revenue, expense or profit information and documents whatsoever to enable LFOW to calculate such indirect profits damages in preparation for trial.

73. Furthermore, LFOW often licenses its product on per web page / URL basis, and did so in USANA's case.

74. While LFOW has requested for USANA to identify and produce information regarding the unauthorized web page / URL locations where USANA displayed LFOW's product and derivative works based thereon, USANA has failed to provide any such information and related documents.

75. Because the requested information and documents sought by Plaintiff's discovery requests goes to the heart of Plaintiff's liability and damages theories, Defendant must fully and completely respond to the discovery.

### B. USANA Should Be Sanctioned for Spoliation and Discovery Abuses

76. Courts possess inherent authority to sanction litigants for spoliation of evidence

---

This information supports LFOW's theory that USANA modified the LFOW Video Player to disable its monitoring security feature that was designed to report certain information about the use of the product to LFOW.

and other abusive discovery practices. *See e.g. Computer Assoc. Int'l, Inc. v. American Fundware, Inc.*, 133 F.R.D. 166 (D. Colo. 1990) (granting default judgment against a software developer for destruction of source code which holder claimed would have shown copyright infringement through a code comparison); *see also Cabnetware, Inc. v. Sullivan*, 1991 U.S. Dist. LEXIS 20329 (E.D. Cal. July 15, 1991) (granting motion for default judgment against defendant who destroyed computer source code necessary to proving plaintiff's copyright infringement case).

77.     Destruction, removal or concealment of metadata in electronic computer files, video files and other e-data in sanctional discovery abuse or spoliation *See, e.g., Stream Companies, Inc. v. Windward Adver.*, 12-CV-4549, 2013 WL 3761281 (E.D. Pa. July 17, 2013) (awarding plaintiff monetary sanctions of attorneys' fees incurred in filing the motion for sanctions due to defendant's destruction of e-mails, as well as the attorneys' fees and any other costs incurred in attempts to obtain the destroyed e-mails, and further noting that plaintiff may be compensated for the expenses incurred for other motions or hearings that were a direct result of the deletion of the e-mails); *TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc.*, CIV.A. 06-5359PGS, 2009 WL 690996 (D.N.J. Mar. 11, 2009) (imposing sanction of adverse inference against defendants for the destruction and/or deletion of e-mails, invoices, and other business documents from defendant's computer and for running a hard drive cleaning program after the commencement of the lawsuit, as well as monetary sanctions to reimburse plaintiff for relevant fees and costs).

78.     Electronic documents and data should be produced in their native format (including the metadata), and the objecting party must show undue hardship and/or expense for why that should not be the case. *See Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 106 (E.D. Pa.

2010).  Thus the court Romero, quoting the Principal 12 of the Sedona Principals of electronic discovery, noted "Absent party agreement or court order specifying the form or forms of production, production should be made in the form or forms in which the information is ordinarily maintained or in a reasonably usable form, taking into account the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search, and display the information as the producing party were appropriate or necessary in light of the nature of the information and the needs of the case."

*Id*.

79. Here, not only did USANA fail to produce electronic documents and data in their native format, USANA when out of its way to create and produce files in formats other than their native format in order to conceal and/or delete metadata and prevent or unduly burden LFOW in using, searching and analyzing USANA's documents and data.

80. Therefore, a spoliation instruction, additional discovery, compelling USANA to conduct depositions in this District, permitting LFOW to conduct additional discovery and extending applicable case management deadlines, are all appropriate sanctions against USANA for its discovery abuses. *See e.g. T&E Investment Group, LLC v. Faulkner*, Nos. 11-CV-0724-P, 3:11-CV-1558-P, 2014 WL 550596 (N.D. Tex. Feb. 12, 2014) (Court ordered an adverse inference of spoliation and monetary sanctions of $27,500 against a defendant who manipulated metadata in an attempt to conceal his use of an unproduced computer).

81. Consequently, Defendant should be sanctioned in the manner set forth in the proposed form of Order filed contemporaneously herewith.

    **C.**    **Additional Discovery and Case Management Timeframes**

82. Plaintiff respectfully requests a reasonable extension of the following case

management deadlines in order to process the produced information and documents and conduct the depositions of Defendant's personnel as follows:

    a.    Discovery end date from April 10, 2014 to May 16, 2014.

    b.    Plaintiff's expert report deadline from April 24, 2014 to May 16, 2014.

    c.    Defendant's expert report deadline from May 2, 2014 to May 30, 2014.

83.    Plaintiff further respectfully requests that it be granted leave to serve Plaintiff is hereby granted leave to serve on Defendant (a) an additional fifty (50) interrogatories, and (b) an additional fifty (50) requests for production of documents and things, and that Defendant's time to respond to LFOW's discovery shall be reduced to ten (10) days of the date of service.

## IV. CONCLUSION AND CERTIFICATION

84.    In light of the foregoing, USANA should be compelled to provide full and complete answers, documents and data in response to LFOW's discovery, and sanctions for its abusive discovery practices.

85.    Pursuant to Fed. R. Civ. P. 37 and Local Rule 39.1(f), LFOW hereby certifies that it has made a good faith attempt to obtain discovery responses and resolve these discovery disputes with USANA, as more fully described herein and in the certificated filed herewith, but such disputes remain unresolved.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant its Motion to Compel Discovery and For Sanctions in accordance with the proposed form of Order, and award such other relief as it deems just and appropriate.

                        Respectfully submitted,

                        TINOVSKY LAW FIRM

Dated: March 17, 2012        By: s/ Vladislav Tinovsky
                                    Vladislav Tinovsky, Esq.

Five Neshaminy Interplex
Suite 205
Trevose, PA 19053
P: 215.568.6860
E: vtinovsky@tinovsky.com
*Counsel for Plaintiff Live Face On Web, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of March, 2014, Plaintiff's Motion to Compel and For Sanctions was forwarded to the below-listed counsel via the ECF system:

>Michael V. Tinari, Esq.
>Paul H. Schultz, Esq.
>Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
>Two Penn Center, Suite 1910
>Philadelphia, PA 19102
>*Counsel for Defendant*

>/s/ Vladislav Tinovsky
>Vladislav Tinovsky